#### IN THE UNITED STATES DISTRICT COURT
#### FOR THE DISTRICT OF COLORADO

Civil Action No. 1:18-cv-002076-WYD-SKC

PEATINNA BIGGS,

    Plaintiff,

v.

THE COUNTY OF SEDGWICK,
SEDGWICK COUNTY SHERIFF'S DEPARTMENT,
FORMER SHERIFF THOMAS HANNA, AND
LARRY NEUGEBAUER,
in their individual and official capacity,

    Defendants.

## MOTION TO DISMISS

Defendants, **THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF SEDGWICK** (incorrectly designated above as The County of Sedgwick), by their attorneys, **SENTER GOLDFARB & RICE, LLC**, and pursuant to Fed.R.Civ.P. 12(b)(6), hereby move the Court for an order dismissing Plaintiff's First Amended Complaint [ECF No. 16], and in support thereof, state as follows:

### CERTIFICATE OF COMPLIANCE

1.    Pursuant to D.C.COLO.LCivR 7.1(b)(2), undersigned counsel were not required to confer with opposing counsel prior to filing this Motion.

### I.   FACTS AS PLED IN THE AMENDED COMPLAINT

2. On August 10, 2016, Plaintiff, who considers herself to be mentally disabled pursuant to a finding of the Social Security Administration, was an inmate at the Sedgwick County Jail, located in Julesburg, Colorado. [*See* Amended Complaint, ¶¶ 9–13, 15, 16, 18.]

3. At that time, The Sedgwick County Jail was run by the then Sheriff of Sedgwick County, Thomas Hanna ("Hanna"). [*Id.*, ¶ 19.]

4. That day, Hanna informed then Deputy Sheriff of Sedgwick County Larry Neugebauer ("Neugebauer") that he would be personally transporting Plaintiff to the Logan County Jail using his personal vehicle. [*Id.*, ¶¶ 21 and 22.]

5. At approximately 12:15 p.m. that afternoon, Neugebauer witnessed Hanna assist Plaintiff into the sheriff's personal vehicle. [*Id.*, ¶ 26.]

6. Hanna then transported Plaintiff to his home and molested her. [*Id.*, ¶¶ 26, 29, 31, 34, 41, 50.]

7. Although Neugebauer witnessed Hanna's empty vehicle parked in front of the sheriff's home, at no time did Neugebauer witness or have knowledge of the molestation. [*Id.*, ¶¶ 45–49.]

8. At approximately 12:51 p.m., Hanna transported Plaintiff to the Logan County Jail, thereby relieving himself of custody over Plaintiff later that day. [*Id.*, ¶¶ 51 and 52.]

9. The extent of Hanna's actions as they relate to Plaintiff were in clear violation of "Sedgwick County Sheriff's Office Department policy," to include its prohibition on the use of personal vehicles to transport inmates, the act of transporting an inmate to an officer's home, as well as the act of an officer engaging in sexual contact with an inmate. [*See id.*, ¶¶ 23, 30, 54.]

10. 12 days later, on August 22, 2016, Neugebauer reported what he had witnessed to the Logan County District Attorney. Specifically, that Hanna had used a personal vehicle to transport Plaintiff and that he had later seen this vehicle parked in front of the sheriff's home. [*Id.*, ¶¶ 22, 23, 46–50, 80.]

11. As a result of Neugebauer's voluntary report, an investigation ensued and Plaintiff was interviewed by the Logan County District Attorney's Office. [*Id.*, ¶ 81.]

12. Two days following Neugebauer's report and 14 days following the August 10, 2016 incident, Hanna was arrested. [*Id.*, ¶ 82.] Hanna was later convicted for his willful violation of the "department's policies" and was removed from office as sheriff. [*Id.*, ¶¶ 83 and 84.]

13. "The County of Sedgwick … did not have any policy in place to oversee and internally monitor the actions of … former Sheriff Hanna." [*Id.*, ¶ 90.]

14. As a result of the incident, Plaintiff filed this suit against the Board of County Commissioners of the County of Sedgwick (the "Board"), alleging a violation of her civil rights pursuant to 42 U.S.C. § 1983. [*See id.*, ¶¶ 142–155.]

15. This action was not commenced until August 15, 2018, more than two years after the August 10, 2016 incident involving Hanna. [*See* ECF No. 1, p. 15, filing date inscription.]

## II.   STANDARD OF REVIEW

16. In order for a complaint to survive a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6), it "must contain enough allegations of fact 'to state a claim for relief that is plausible on its face.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face when its allegations, taken as true, allow the court to "draw the reasonable inference that the defendant

3

is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court, however, need not accept conclusory allegations without supporting factual averments. *See Ruiz v. McDonell*, 299 F.3d 1173, 1181 (10th Cir. 2002). Moreover, "[i]f the allegations ... show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim..." *Barnes v. United States*, 776 F.3d 1134, 1139 (10th Cir. 2015) (quoting *Jones v. Bock*, 549 U.S. 199, 215 (2007)) (internal quotations omitted).

### III.   ARGUMENT

#### A.   THE BOARD IS NOT LIABLE FOR HANNA'S ACTIONS.

17.   Plaintiff's assertions that "Sedgwick County policy was the moving force behind [Plaintiff's] constitutional injury" [Amended Complaint, ¶ 149], and that the Board "is the proper local governmental entity to be sued" [*Id.*, ¶ 8], are conclusory and should therefore not be accepted by the Court. *See Ruiz*, 299 F.3d at 1181.

##### *1.   The Board's policies were not the moving force behind the alleged violation, thus defeating municipal liability.*

18.   County governments may be held liable for civil rights violations under Section 1983 only if such violations result from the "execution of [that] government's policy or custom." *Monell v. Dep't. of Social Serv. of City of New York*, 436 U.S. 658, 694, (1978). To establish municipal liability, a plaintiff must show: (1) the *existence* of a municipal policy or custom; and (2) that there is a *direct causal link* between the policy or custom and the injury alleged. *See Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 782 (10th Cir. 1993) (citing *Canton v. Harris*, 489 U.S. 378, 385 (1989)) (emphasis added). Meeting this standard requires a showing that "the municipality was the *moving force* behind the injury alleged." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013) (internal quotations omitted) (emphasis added).

4

### a. *Plaintiff fails to adequately allege the existence of a Board policy.*

19. As a preliminary matter, the Amended Complaint lists several "department policies" and expressly attributes these policies to the Sedgwick County Sheriff's Office. [*See* Amended Complaint, ¶¶ 23, 30, 54, 118.] Nowhere in the Amended Complaint, however, does Plaintiff specifically describe how the Board is in any way responsible for the creation or enforcement of these policies. Instead, Plaintiff merely alleges that the Sheriff's Office "is an agency of Sedgwick County." [*Id.*, ¶¶ 8, 54.] As analyzed below, however, the Board and the Sheriff's Office are entirely separate entities and such policies are therefore not attributable to the Board. Moreover, the Amended Complaint also expressly states that "[t]here was *no* legitimate policy or goal to justify Defendant Hanna's [violative acts]" [*id.*, ¶ 139] (emphasis added), again demonstrating Plaintiff's inability to prove the first element of her municipal liability claim. *See Hinton*, 997 F.2d at 782. Because Plaintiff has failed to demonstrate even the existence of a single Board policy, her claims against the Board should be dismissed.

### b. *Plaintiff fails to adequately allege a causal link between government policy and the alleged violation.*

20. Even assuming, *arguendo*, that the "department policies" could fairly be attributed to the Board, Plaintiff also fails to establish a direct causal link between these policies and the alleged violations. The policies in question, as described by Plaintiff, include a "zero tolerance" approach to sex assault on inmates, a policy on equal protection for inmates with mental disabilities, and a policy "prohibiting transport of inmates in officers' personal vehicles, and to their residences." [*See* Amended Complaint, ¶¶ 23, 30, 54, 118.] The Amended Complaint, however, goes on to expressly state that each of these policies were "not followed" on the day of the incident and describes these acts as "blatantly defying lawful municipal policy or custom."

5

[*Id*., ¶¶ 150–153.] Hanna's actions could therefore not have been motivated by, or causally linked to the policies at issue given Plaintiff's own acknowledgement that he was in clear breach of such policies throughout the course of the incident. *See Henderson v. City & Cty. of Denver*, 12-CV-0625-WJM-BNB, 2014 WL 222761, at *7 (D. Colo. Jan. 21, 2014) (dismissing municipal liability claim for failure to establish a "causal link" where defendants showed that violative acts were in breach of official policy). Because Plaintiff has failed to demonstrate a direct causal link between the enumerated policies and the alleged violative acts, she cannot now claim that such policies were the moving force behind the alleged violations. As such, Plaintiff's municipal liability claim should be dismissed.[1]

### 2. *The Board had no notice of the type of constitutional harm alleged by Plaintiff prior to the event in question, thus defeating Plaintiff's failure to act claim.*

21. Allegations that a governing body should be held liable for a "failure to adopt a policy applicable to the circumstances presented" is properly examined under the "failure to act" analysis. *See Hollingsworth v. Hill*, 110 F.3d 733, 744–45 (10th Cir. 1997). "Where the official policy that forms the basis of a local government liability claim consists of a *failure to act*, the plaintiff must demonstrate that the [entity's] inaction was the result of deliberate indifference to the rights of its inhabitants." *Id.* at 745 (quoting *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir.1993) (emphasis added)). "[A] [Board] is deliberately indifferent when [it] deliberately or

---

[1] Although Plaintiff now seeks to introduce new allegations against then Deputy Sheriff Neugebauer to include participation in an alleged conspiracy and his alleged failure to intervene, [*see* Amended Complaint, ¶¶ 162 and 166], Plaintiff fails to present a single Board policy which could have been the moving force behind these claims, nor can she establish a causal link between the "department policies" and these new allegations. As a result, municipal liability cannot be extended based on Plaintiff's newly created allegations which have suddenly materialized in the Amended Complaint. *See Monell*, 436 U.S. at 694.

consciously fails to act when presented with an obvious risk of constitutional harm which will almost inevitably result in constitutional injury of the type experienced by the plaintiff." *Id*. (quoting *Canton v. Harris*, 489 U.S. 378, 390 (1989) (internal quotations omitted)).

22. In her Amended Complaint, Plaintiff now introduces the theory that the Board should be liable because it "did not have any policy in place to oversee and internally monitor the actions of [the sheriff.]" [Amended Complaint, ¶¶ 90, 143, 150–152, 154–155.] As with her previous claims, however, Plaintiff again fails to satisfy or even allege the elements of this claim. Nowhere in the Amended Complaint is there a single allegation or supporting fact demonstrating that the Board had knowledge of, or was at any time presented with, a sexual assault involving a Sedgwick County Jail inmate and a sheriff of Sedgwick County. Nor does Plaintiff demonstrate how, in the time leading up to this event, it would have been reasonable for the Board to assume that its failure to employ what could only be described as a round-the-clock monitoring protocol geared specifically at the sitting sheriff [2] would inevitably result in the constitutional injury similar to that alleged by Plaintiff. As such, Plaintiff has failed to adequately allege her "failure to act" claim against the County and this claim should be dismissed.[3]

---

[2] [*See* Amended Complaint, ¶¶ 143–144, 151–152.]

[3] To the extent that Plaintiff has alleged a *failure to supervise* claim against the Board, such claim fails on the grounds that Plaintiff has presented no facts or allegations that the Board had a duty to oversee a sitting sheriff, which is an essential element of this claim. *See Serna v. Colorado Dep't of Corr.*, 455 F.3d 1146, 1154 (10th Cir. 2006) ("[o]ur cases make clear that failure to supervise is only actionable under § 1983 against a defendant who had a [legal] duty to supervise") (citing *Meade v. Grubbs*, 841 F.2d 1512, 1528 (10th Cir.1988)).

7

### 3. *Claims against a sheriff are generally not cognizable against a county board.* [4]

23. Under *McMillian v. Monroe County, Ala*, courts must first look to the relevant state's laws when determining which governmental entity would have control over and would thus be liable for the actions of a local sheriff. *See* 520 U.S. 781, 784–91 (1997) (Applying Alabama law and determining that a county sheriff was actually a state official, thereby relieving the county board of liability for his actions). In Colorado, it has been firmly held that a sheriff and his deputies are entirely separate from a county's governing board. *See Tunget v. Bd. of Cty. Comm'rs of Delta Cty.*, 992 P.2d 650, 651-52 (Colo.App. 1999) (affirming dismissal of claims against a county board and stating "[u]nder both the Colorado Constitution and applicable statutes, sheriffs and boards of county commissioners are treated as separate public entities having different powers and responsibilities") (citing Colo. Const. art XIV, §§ 8 and 8.5); *see also Barrientos-Sanabria v. Lake Cty., Colo.*, 11-CV-00838-KLM, 2012 WL 1642285, at *2 (D. Colo. May 10, 2012) (dismissing claims against a county board stating that although "the [county] has the duty and authority to provide funds for operations by the Sheriff's Office[,] pursuant to the Colorado constitution, the [county board] is a separate, distinct entity from the County Sheriff").

24. This distinction is even more evident in the area of supervision over county jails and jail inmates. *See Archuleta v. Adams Cty. Bd. of Cty. Comm'rs*, 07-CV-02515-MSK-CBS, 2011 WL 3799029, at *10 (D. Colo. June 14, 2011) ("The sheriff shall have charge and custody

---

[4] Although courts have held that counties could theoretically be liable for a sheriff's actions in specific instances, such liability is only cognizable where it is determined that the sheriff "is held to set the official policy of *the county*." *Sanchez v. Hartley*, 65 F. Supp. 3d 1111, 1127 (D. Colo. 2014), aff'd in part, appeal dismissed in part, 810 F.3d 750 (10th Cir. 2016) (emphasis added). Nowhere in the Amended Complaint, however, does Plaintiff allege that Hanna in any way set the policies of the Board. Accordingly, liability cannot be extended to the Board under this theory.

8

of the jails of the county, and of the prisoners in the jails, and shall supervise them himself or herself or through a deputy or jailer") (quoting COLO.REV.STAT. § 30–10–511); *see also Estate of Began v. Lake Cty., Colorado Sheriff's Office*, 07-CV-01786-WDM-CBS, 2008 WL 2690702, at *6 (D. Colo. July 3, 2008) ("[a] sheriff, then, is often the final policymaker for matters concerning *the operations of a county jail*") (emphasis added).

25. Here, Plaintiff is attempting to hold the Board liable for the unlawful acts of a former sheriff, which he took while exercising custody over a then inmate of the Sedgwick County Jail. [Amended Complaint, ¶ 148.] However, because counties and sheriffs are considered separate entities under Colorado law and control over such inmates are uniquely the responsibility of the sheriff and not a county's board, all claims against the Board should be dismissed because they are not cognizable under the circumstances of this case. *See Archuleta*, 2011 WL 3799029, at *10 ("[a] Board of County Commissioners has certain enumerated powers and operation of the jail is not one of them").

### B. PLAINTIFF'S CONSPIRACY ALLEGATIONS FAIL TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED.

26. In an apparent attempt to circumvent the statute of limitations defense raised by the Board in seeking to dismiss Plaintiff's original Complaint [ECF No. 1], Plaintiff's Amended Complaint—from whole cloth—now raises allegations of a conspiracy. The veracity of this allegation notwithstanding, Plaintiff and her counsel have failed to adequately plead such claim.

27. To state a conspiracy claim arising under 42 U.S.C. § 1985, a plaintiff must demonstrate that the alleged conspirators had a (1) meeting of the minds and (2) engaged in concerted action to violate the plaintiff's constitutional rights. *Montoya v. Bd. Of Cty. Comm'rs*, 506 F. Supp. 2d 434, 443 (D. Colo. 2007) In doing so, a plaintiff must allege "*specific facts*

9

showing agreement and concerted action among defendants …" *Durre v. Dempsey*, 869 F.2d 543, 545 (10th Cir. 1989) (citing *Sooner Prods. Co. v. McBride*, 708 F.2d 510, 512 (10th Cir.1983). (emphasis added). *See also Montoya*, 506 F. Supp. 2d at 443 (holding that a plaintiff "must provide sufficient facts to support the inference that some prearranged plan or joint action existed between the conspirators to engage in all of the alleged conspiratorial activities"). A plaintiff must also show that she was injured in her "person or property" or was "deprived of having and exercising any right or privilege of a citizen of the United States." *See Thornton v. Kaplan*, 937 F. Supp. 1441, 1446 (D. Colo. 1996) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 103–04 (1971)) (internal quotations omitted). "Conclusory allegations of conspiracy are insufficient to state a valid [civil rights] claim." *Durre*, 869 F.2d at 545 (internal citation omitted).

28. The Amended Complaint merely states that "Deputy Neugebauer conspired with Former Sheriff Hanna to coverup and not report on August [], 2016, the sexual assault of a mentally disabled inmate." [Amended Complaint, ¶ 57.] Plaintiff then goes on to repeat this conclusory statement 11 more times. [*See id.*, ¶¶ 59, 61, 63, 65, 67, 69, 71, 73, 75, 77, 79.] Plaintiff also states that "[b]ased on [Plaintiff's] status as a mentally disabled female, Defendant Neugebauer conspired with Defendant Hanna to coverup the incident," that "Defendant Neugebauer conspired with Defendant Hanna to coverup the incident" and that "Defendant Hanna and Defendant Neugebaurer (sic) conspired to impede, hinder, obstruct, or defeat the due course of justice…" [*See id.*, ¶¶ 121, 134, 166.] None of Plaintiff's vague and conclusory allegations, however, provides a single specific fact inferring the existence of a concerted action, prearranged plan, agreement, or even that a conversation was held between these individuals following the August 10, 2016 incident.

29. Plaintiff has also failed to allege that the purported 12-day conspiracy—which she asserts began on August 10, 2017—was a concerted action to violate her constitutional rights given that the "conspiracy," as alleged by Plaintiff, would have necessarily been formed subsequent to the violative acts which occurred earlier that day. Additionally, Plaintiff has provided no facts or assertions which demonstrate how an alleged agreement which made it "too late for a rape kit," or which resulted in "DNA evidence [not being] collected" [Amended Complaint, ¶ 81], resulted in an injury to her person or property, or otherwise deprived her of a federally protected right. *See Thornton*, 937 F. Supp. at 1446; *see also Holmes v. Finney*, 631 F.2d 150, 154 (10th Cir. 1980) ("infringement of some federally protected right independent of § 1985(3) is required for a violation of the conspiracy statute"). Because Plaintiff has failed to show the existence of a prearranged plan which deprived her of a federally protected right, she has failed to sufficiently plead her Section 1985 conspiracy claim. Thus, the accrual date for all of Plaintiff's Section 1983 claims should remain August 10, 2016, despite counsel's attempt to creatively plead around a missed filing deadline.[5]

### C. PLAINTIFF'S CLAIMS ARE TIME-BARRED.

30. For claims arising under Section 1983, state law governs the applicable statute of limitations period and in Colorado this period is two years. *See Braxton v. Zavaras*, 614 F.3d 1156, 1159–1160 (10th Cir. 2010). "While state law governs limitations and tolling issues, federal law

---

[5] Defendants further note that Plaintiff's allegations involving a violation of Section 1986 are time-barred by the express *one-year* statutory limitations period applicable to such allegations. *See* 42 U.S.C. § 1986 ("no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued").

11

determines the accrual of § 1983 claims." *Fratus v. DeLand*, 49 F.3d 673, 675 (10th Cir. 1995). "A civil rights action accrues when facts that would support a cause of action are or should be apparent." *Id.* (internal citations and quotations omitted); *see also Johnson v. Johnson Cty. Comm'n Bd.*, 925 F.2d 1299, 1301 (10th Cir. 1991) ("Section 1983 claims accrue, for the purpose of the statute of limitations, when the [injured party] knows or has reason to know of the injury which is the basis [for the] action") (internal citations omitted).

31. Colorado law permits the tolling of a limitations period for individuals with disabilities (such as "mental incompetence") who remain unrepresented. *See Whitington v. Sokol*, 491 F. Supp. 2d 1012, 1014 (D. Colo. 2007) ("The [court] correctly finds that C.R.S. § 13-81-103 provides for the tolling of any limitations period for the commencement of an action by any person suffering from a disability and provides that unrepresented persons with a disability may bring an action up to two years after the disability terminates"). However, "[u]nder Colorado law, plaintiffs bear the burden of demonstrating that the statute of limitations should be tolled." *Braxton*, 614 F.3d at 1159.

32. In order for a plaintiff to prove that they qualify as "mentally incompetent" for purposes Colorado's tolling statute, they must show that such determination has been previously made by a "community-centered board." *See* COLO.REV.STAT. §§ 13-81-103; 25.5-10-202(4), (26)(a)–(b); 25.5-10-237(1). *See also Graham v. Teller Cty., Colo.*, 632 Fed. Appx. 461, 464 (10th Cir. 2015) ("without a community-centered board's determination that [plaintiff] has an impairment …, [she] can't be deemed mentally incompetent for purposes of the tolling statute"). In determining whether the limitations period should be tolled under C.R.S. § 13-81-103, the Tenth Circuit will also consider whether a plaintiff had the presence of mind to secure an attorney to

12

pursue her claims. *See Hance v. Karlis*, 94 F.3d 655 (10th Cir. 1996) ("[Plaintiffs'] retention of legal counsel to assist them in asserting appropriate legal claims vitiates [their] contention that mental incapacity prevented the assertion of such claims within the two-year statute of limitations period provided under Colorado law").

33.     All of the acts which Plaintiff now claims resulted in a violation of her civil rights were committed by Hanna during an incident which occurred on August 10, 2016, between 12:15 and 12:51 p.m. [*See* Amended Complaint, ¶¶ 26–52.] The Complaint goes on to indicate that immediately following this incident, at 12:51 p.m. that afternoon, Plaintiff was transported to the Logan County Jail, where she was then transferred into the custody of those officials. [*See id.*, ¶¶ 51 and 52.] Because the facts which would have supported Plaintiff's claims were, or at the very least should have been apparent to Plaintiff immediately following the August 10, 2016 incident, Plaintiff's cause of action would have accrued at that time as well, thereby triggering the two-year limitations period. *See Fratus*, 49 F.3d at 675.

34.     In her Amended Complaint, Plaintiff now attempts to argue that, given her mental disability, she should be exempted from the limitations period pursuant to Colorado's tolling statute. [*See* Amended Complaint, ¶¶ 9–17.] Plaintiff, however, fails to demonstrate how she qualifies under that statute. Specifically, Plaintiff has not demonstrated that a community-centered board has at any time determined her to be "mentally incompetent" as required by law. Instead, Plaintiff appears to argue that this requirement has been met by asserting that a similar determination was made by the Social Security Administration. [*See id.*, ¶¶ 10 and 13.] Such assertion, however, is irrelevant to whether Colorado's statutory tolling requirements have been satisfied. *See e.g.*, *Veren v. United States*, 575 Fed. Appx. 841, 842 (10th Cir. 2014) (affirming the

13

denial of statutory tolling, stating "[plaintiff] claims that he was legally disabled because the Social Security Administration deemed him disabled for purposes of the Social Security Act. But to be found disabled under that Act, a person need only show that he's incapable of 'substantial gainful activity'—a standard different than that found in Colorado's statutory tolling provision").

35.     Additionally, Plaintiff—in fact—has retained and is proceeding with the aid of legal counsel. Both the Complaint [ECF No. 1] and the Amended Complaint [ECF No. 16] were signed and filed by Plaintiff's attorney, Ms. Kaitlin F. Nares. Indeed, Ms. Nares was the same attorney who signed Plaintiff's Notice of Claim[6] [attached hereto as **Exhibit A**], which was served on the Board on November 11, 2016. Because Plaintiff has demonstrated her ability to obtain counsel and has retained this same counsel for at least two years [*see* **Exh. A**, p. 6], she cannot now claim that the statute of limitations should be tolled on account of an alleged "mental disability."[7] *See Hance*, 94 F.3d 655 (10th Cir. 1996). Because Plaintiff and her counsel did not file the Complaint until August 15, 2018, more than two years after the date on which her Section 1983 claims accrued on August 10, 2016, her claims are time-barred and should therefore be dismissed.

---

[6] When evaluating a 12(b)(6) motion, a court may take judicial notice of a public record without converting the motion to one for summary judgment. *See Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006). Under Colorado law, a public record is defined as "all writings … maintained, or kept by [a] … political subdivision of the state ... for use in the exercise of functions required or authorized by law or administrative rule." *Smith v. Plati*, 56 F. Supp. 2d 1195, 1199 n.4 (D. Colo. 1999), aff'd, 258 F.3d 1167 (10th Cir. 2001) (citing Colo.Rev.Stat. § 24-72-202). Because Plaintiff's Notice of Claim was kept and maintained by Sedgwick County in anticipation of pending litigation—a function authorized by law—it qualifies as a public record and is therefore appropriate for judicial notice.

[7] Defendants further note that Plaintiff's counsel has made no assertion that she has been appointed or retained by Plaintiff's "representative" such as a general guardian or conservator, or that a guardian ad litem has authorized such representation as outlined under Fed.R.Civ.P. 17(c). This omission further demonstrates that at no point was Plaintiff deemed "mentally incompetent."

14

## IV.   REQUEST FOR RELIEF

**WHEREFORE**, the Board respectfully requests that this Court grant relief as follows:

A.   Dismissing Plaintiff's Complaint with prejudice;

B.   Entering judgment in favor of the Board and against Plaintiff for attorney fees and costs; and

C.   Such further and other relief as the Court deems just and proper.

Respectfully submitted,

*s/ Thomas S. Rice*
**Thomas S. Rice**
Senter Goldfarb & Rice, LLC
3900 E. Mexico Ave., Suite 700
Denver, CO  80210
Telephone:  (303) 320-0509
Facsimile:   (303) 320-0210
trice@sgrllc.com


*s/ Jonathan N. Eddy*
**Jonathan N. Eddy**
Senter Goldfarb & Rice, LLC
3900 E. Mexico Ave., Suite 700
Denver, CO  80210
Telephone:  (303) 320-0509
Facsimile:   (303) 320-0210
jeddy@sgrllc.com
*Attorneys for Defendant Board of County Commissioners of the County of Sedgwick*

## CERTIFICATE OF SERVICE

  **I HEREBY CERTIFY** that on this 5th day of November, 2018, I electronically filed a true and correct copy of the above and foregoing **MOTION TO DISMISS** with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following address:

Jane Fisher-Byrialsen
David N. Fisher
Kaitlin F. Nares
Fisher & Byrialsen, PLLC
4600 South Syracuse Street, 9th Floor
Denver, Colorado 80237
E-Mail: jane@fblaw.org
E-Mail: david@fblaw.org
E-Mail: kaitlin@fblaw.org
*Attorneys for Plaintiff*

                 *s/ McKenna Reich*
                 McKenna Reich, Legal Secretary