## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 18cv2076 (WYD)(SKC)

PEATINNA BIGGS

       Plaintiff,

v.

THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF SEDGWICK,
SHERIFF CARLTON BRITTON,
FORMER SHERIFF THOMAS HANNA, and
LARRY NEUGEBAUER,
in their individual and official capacity

       Defendants.

---

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' FED. R. CIV. P. R. 12(B)(6) MOTION TO DISMISS

---

Kaitlin F. Nares, Esq.
Fisher & Byrialsen, PLLC
*Attorneys for Peatinna Biggs*
4600 S. Syracuse St., 9th Floor
Denver, Colorado 80237
T: (303) 256-6345
F: (303) 954-0573
E: Kaitlin@fblaw.org

## **TABLE OF CONTENTS**

INTRODUCTION………………………………………………………………………...1

STATEMENT OF RELEVANT FACTS…………………………………………………1

ARGUMENT……………………………………………………………………………...3

I.      Standard of Review……………………………………………………………..3

II.     Ms. Biggs' IQ and Adaptive Testing, Special Education Classes, and CCB
        Determination are Sufficient Proof of Developmental Disability to Toll Her Claims........4

III.    The Department is Municipally Liable Based on Two Separate Theories………………..6

A.      The Department is Municipally Liable for Hanna's Policy Making Decisions…………...7

B.    The Department is Municipally Liable for its Inaction, Creating the Environment
      that Allowed Hanna and Neugebauer to Violate Ms. Biggs' Constitutional Rights…………..8

III.    Neugbauer is Not Shielded by Qualified Immunity ……………………………...…..10

CONCLUSION…………………………………………………………………………..15

i

## <u>TABLE OF AUTHORITIES</u>

*A.M. v. N.M. Dep't of Health,* 65 F. Supp. 3d 1206 (D.N.M. 2014)..............................14

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).......................................11

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)..................................3

*Bell v. Wolfish*, 441 U.S. 520 (1979)..............................................9

*Bordanaro v. McLeod,* 871 F.2d 1151 (1st Cir. 1989)....................................8

*Boddie v. Schnieder*, 105 F.3d 857 (2nd Cir. 1997)...............................9, 14

*Brown v. Montoya,* 662 F.3d 1152 (10th Cir. 2011)....................................3

*Casey v. City of Fed. Hgts.*, 509 F3d 1278 (10th Cir. 2007).........................11

*Cnty. of Sacramento v. Lewis*, 523 U.S. 833 (1998)..................................15

*Dias v. City & Cnty. of Denver*, 567 F.3d 1169 (10th Cir. 2009)......................4

*Estate of Began v. Lake Cty., Colorado Sheriff's Office*, 2008 US Dist LEXIS 51146 (D. Colo. July 3, 2008..............................................................7

*Fisher v. Shamburg*, 624 F.2d 156 (10th Cir. 1980)...................................11

*Foote v. Spiegel*, 118 F.3d 1416 (10th Cir. 1997)....................................11

*Gehl Group v. Koby,* 63 F.3d 1528 (10th Cir. 1995)..................................13

*Gonzales v. Martinez*, 403 F3d 1179 (10th Cir. 2005)................................8

*Gordon-Smith v. Baldwin*, 2007 US Dist LEXIS 6961 (D. Colo. Jan. 31, 2007)...........9

*Grady v. Jefferson County*, 2008 US Dist LEXIS 7220, at *8 (D. Colo. Jan. 17, 2008).......7

*Graham v. Teller Cty.*, Colo., 632 Fed. Appx. 461 (10th Cir. 2015)..................5

*Hall v. Burke*, 12 F App'x 856 (10th Cir. 2001).....................................12

*Havens v. Johnson*, 2013 US Dist LEXIS 7708, at *18 (D. Colo. Jan. 18, 2013)........................6

*Hope v. Pelzer*, 536 U.S. 730 (2002)...............................................................11

*Hovater v. Robinson*, 1 F.3d 1063 (10th Cir. 1993)……………………………………………...8

*J.A. Balistreri Greenhouses v. Roper Corp.*, 767 P.2d 736 (Colo. App. 1988)............................4

*Jones v. Norton,* 3 F. Supp. 3d 1170 (D. Utah 2014)..................................................14

*Kaufman v. Higgs*, 697 F3d 1297 (10th Cir. 2012)......................................................11

*Layton v. Bd. of County Comm'rs*, 512 F App'x 861 (10th Cir. 2013)...........................................7

*Monell v. Dep't of Social Servs. of N.Y.*, 436 U.S. 658 (1978).......................................7

*Montoya v. Bd. Of Cty. Comm'rs*, 506 F. Supp. 2d 434 (D. Colo. 2007)......................................11

*Oviatt v. Pearce*, 954 F.2d 1470 (9th Cir. 1992)..........................................................8

*Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986)..................................................6, 7

*Peña v. Greffet*, 922 F. Supp. 2d 1187 (D.N.M. 2013)..................................................15

*People in Interest of M.M.,* 726 P.2d 1108 (1986).......................................................6

*Pierce v. Gilchrist*, 359 F.3d 1279 (10th Cir. 2004)..................................................11

*Raguindin v. Yates*, 2016 U.S. Dist. LEXIS 43837 (D. Colo. Feb. 29, 2016)...........................15

*Randle v. City of Aurora*, 69 F.3d 441 (10th Cir. 1995)..............................................7

*Richard v. Bd. of County Comm'rs.*, 2014 US Dist LEXIS 19586 (D. Kan. Feb. 18, 2014).......13

*Rounsville v. Zahl*, 13 F.3d 625 (2d Cir. 1994)..........................................................11

*Sanchez v. Hartley*, 65 F Supp 3d 1111 (D. Colo. 2014)......................................4, 7, 10

*Schneider v. City of Grand Junc. Police Dept.*, 717 F3d 760 (10th Cir. 2013).......................8

*Snyder v. Nolen*, 380 F3d 279 (7th Cir. 2004)...............................................................................14

*Southard v. Miles*, 714 P.2d 891 (Colo. 1986).....................................................................4, 5, 6

*Tafoya v. Salazar*, 516 F.3d 912, 915 (10th Cir. 2008)............................................................8, 9

*Tanner v. McMurray*, 2018 U.S. Dist. LEXIS 196477 (10th Cir. 2018).......................................14

*Tello v. Dean Witter Reynolds, Inc.*, 410 F.3d 1275 (11th Cir. 2005)...........................................4

*Terry v. Sullivan*, 58 P.3d 1098, 1101 (Colo. App. 2002)..............................................................5

*Toevs v. Reid,* 646 F.3d 752 (10th Cir. 2011)…………………………………………………11

*Tunget v. Board of County Comm'rs of Delta County*, 992 P. 2d 650 (Colo. App. 1999)............12

*Turner v. Safley*, 482 U.S. 78 (1987)……………………………………………………………13

*Uintah Health Care Spec. Dist.,* 506 F.3d 1281 (10th Cir. 2007)..................................................7

*United States v. Phelps,* 17 F.3d 1334 (10th Cir. 1994)..............................................................13

*Utah Gospel Mission v. Salt Lake City Corp.,* 316 F. Supp. 2d 1201 (D. Utah 2004)....................3

*Whitington v. Sokol*, 491 F Supp 2d 1012, 1014 (D. Colo. 2007)..................................................6

*Williams v. Berney*, 519 F.3d 1216, 1220 (10th Cir. 2008)..........................................................14

*Wodiuk v. Graziano*, 2017 US Dist LEXIS 86948  (D. Colo. June 6, 2017)...................................6

## MEMORANDUM OF LAW IN OPPOSITION

1. Plaintiff, **PEATINNA BIGGS**, by her attorneys Fisher & Byrialsen, P.L.L.C., opposes Sheriff Carlton Britton (herein "the Department") and Larry Neugebauer's motion to dismiss.

## INTRODUCTION

2. On August 10, 2016, Sedgwick County Sheriff Thomas Hanna abused his authority by targeting a vulnerable, developmentally disabled, female inmate named Peatinna Biggs. As the Department's highest-ranking law enforcement official—in charge of the running and management of the county jail and those in its custody—Hanna had complete control and authority over inmates like Ms. Biggs.  The Department failed to enact "zero-tolerance" policies, or supervision of any kind, to prohibit Hanna from engaging in sexual assault and discrimination of inmates with disabilities. This created an environment that permitted Hanna to be "above the law," allowing him and his loyal deputy, Neugebauer, to violate Ms. Biggs' constitutional rights.  As a result, the Department is liable for Hanna's decisions to abduct, falsely imprison, threaten and molest Ms. Biggs while she was in Hanna's custody.  Neugebauer's inaction and agreement to remain silent to protect Hanna also violated Ms. Biggs constitutional rights for which Neugebauer is liable in both his official and individual capacity.

## STATEMENT OF RELEVANT FACTS

3. On August 10, 2016, Peatinna Biggs was in Sheriff Hanna's custody. *See* Amended Complaint at ¶ 1, 18-19.  Hanna abused his authority by targeting Ms. Biggs—who he knew suffered from a mental disability. *Id.* at ¶ 119, 166.  On that day, Hanna told Ms. Biggs to change into her street clothes, put her into his personal vehicle, brought her to his house against her will, and molested her.  *Id.* at ¶ 1, 24-25, 27-29, 31-44, 50-52.  Ms. Biggs delayed reporting because Hanna threatened her. *Id.* at ¶ 43-44, 55.  Earlier that day, Hanna told his deputy, Neugebauer, that he was

going to personally transfer Ms. Biggs to Logan County Jail. *Id.* at ¶ 21.  Neugebauer then saw Ms.

Biggs in her street clothes and saw her get into Hanna's personal vehicle.  *Id.* at ¶ 43, 152.  Shortly

thereafter, Neugebauer saw both Hanna's personal and department issued vehicles parked at

Hanna's house. *Id.* at ¶ 25-26, 45-49.  At that point, Neugebauer knew that Hanna was committing

a constitutional violation and had every opportunity to stop him.  *Id.* at ¶ 34, 56.  Neugebauer agreed

to stay silent even though he knew Ms. Biggs would likely not report the incident as a result of her

mental disability.  *Id.* at ¶ 57-80, 166.  Because the Department lacked oversight of Hanna's actions,

Hanna and Neugebauer believed they would not be disciplined for not reporting and covering up

the Hanna's unlawful conduct.  *Id.* at ¶ 165.  As a result, Neugebauer failed to intervene.  *Id.* at ¶

56, 166.  Neugebauer took 12 days to report, hindering the prosecution's ability to obtain a rape kit,

collect DNA evidence, and document physical injuries. *Id.* at ¶ 56, 81, 121, 134, 161.

4. Because of the known risks of the authoritarian/subordinate relationship between officers

and inmates, "zero tolerance" policies were implemented by the Department for deputies against

sexual assault and discrimination of inmates with disabilities.  *Id.* at ¶ 54, 126, 129, 150.  The

Department, however, failed to implement similar policies to monitor and supervise Hanna. *Id.* at ¶

8, 53, 90.  As a result, his actions went unchecked, creating the environment that allowed him to

violate Ms. Biggs' constitutional rights. *Id.* at ¶ 90-93, 143-144, 150-152*,* 154-155. As the highest-

ranking law enforcement officer, Hanna approved of the constitutional violations both he and

Neugebauer committed against Ms. Biggs.  *Id.* at ¶ 94, 147.

5. Hanna was criminally charged with Sexual Assault on an At-Risk-Adult, 18-6.5-

103(7)(a).  *Id.* at ¶ 82.  Ms. Biggs is developmentally disabled. *Id.* at ¶ 9.  She underwent IQ and

adaptive testing as a child and was placed in special education classes in school. *Id.* at ¶ 11; (**Exhibit**

**A**, Education Records),[1] Ms. Biggs tested cognitively and functionally below grade average and was designated as special needs. *Id.* at ¶ 11. Ms. Biggs obtained only a special diploma and has since received disability for learning and cognitive disabilities. *Id.* at ¶ 10-13. The Probation Department, the Sheriff's Department, and the District Attorney's Office were all aware of Ms. Bigg's mental disabilities. *Id.* at ¶ 16. Furthermore, Eastern Colorado, a community centered board, reviewed her education and medical records and current IQ testing before designating Ms. Biggs as developmental disability. *Id.* at ¶ 15; *See* **Exhibit B** CCB Review Letter; **Exhibit C**, CCB Determination Letter.[2] Though Ms. Biggs is developmentally disabled, she has not yet been appointed a "legal representative" by the Court. *Id.* at ¶ 14.

**ARGUMENT**

## I.     Standard of Review

6. To survive a motion to dismiss, a plaintiff's pleadings must nudge their claims across the line from conceivable to plausible. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). In reviewing a motion to dismiss, "all well-pleaded factual allegations in the … complaint are accepted as true and viewed in the light most favorable to the nonmoving party." *Brown v. Montoya,* 662 F.3d 1152, 11662-63 (10th Cir. 2011). Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect

---

[1] "A court may take judicial notice of matters of public record outside the pleadings without converting a motion to dismiss into a motion for summary judgment." *Utah Gospel Mission v. Salt Lake City Corp.,* 316 F. Supp. 2d 1201, 1205, n 5 (D. Utah 2004). An unsealed court file is a public record. In Defendant Hanna's criminal trial, *People v. Hanna*, 16CR207, the prosecution admitted People's Exhibit 44—Ms. Biggs' childhood education records which shows her placement in Educable Mentally Handicapped ("EMH"), Exceptional Student ("Ex St") and Exceptional Student Education ("ESE") classes.

[2] A public record also includes all writings maintained by any local government-financed entity that functions under the authorization of state by law or administrative rule. Colo. Rev. Stat. § 24-707-202. Eastern Colorado Services ("ESC") is a state-funded community centered board. By statute it must utilize state-funded services; hold board meetings open to the public; determine the needs of eligible persons; and report annually to the state department for auditing. Exhibits B and C were drafted and maintained by ESC regarding its evaluation and determination of disability which it is authorized to do and report to the state. Ms. Biggs determination letter, Exhibit C, was presented to the state as a record for auditing of all disabled persons receiving service.

3

the interests of justice." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009). "Thus, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts [are] improbable, and that a recovery is very remote and unlikely." *Sanchez v. Hartley*, 65 F Supp 3d 1111, 1120 (D. Colo. 2014).

7. "When the motion to dismiss is based on a statute-of-limitations defense it is granted *only* if it appears beyond a doubt that Plaintiffs can prove *no set of facts* that toll the statute." *Tello v. Dean Witter Reynolds, Inc.*, 410 F.3d 1275, 1288 n.13 (11th Cir. 2005) (emphasis added). Whether the statute of limitations bars a particular claim is inherently a factual issue, it is normally a question of fact for the jury and deference should be provided to the plaintiff when plausible evidence supporting tolling is proffered. *See J.A. Balistreri Greenhouses v. Roper Corp.*, 767 P.2d 736 (Colo. App. 1988); *see also Southard v. Miles*, 714 P2d 891, 901 (Colo. 1986) (Court discussed the "inappropriateness of resolving the factual issues relating to Southard's mental status within the format of a summary judgment proceeding").

## II.    Ms. Biggs' IQ and Adaptive Testing, Special Education Classes, and CCB Determination are Sufficient Proof of Developmental Disability to Toll Her Claims.

8. The claims asserted by Ms. Biggs pursuant to 42 U.S.C. § 1983 *et seq.* are governed by Colorado's two-year statute of limitations for personal-injury claims. *See* Colo. Rev. Stat. § 13-80-102. However, in Colorado, the statute of limitations does not run against a person who is (1) mentally incompetent and (2) without a legal guardian. *See* Colo. Rev. Stat. §§ 13-81-101, 103.

9. **Mental Incompetence.** Colorado defines mental incompetence as any one of three different states: (1) "mentally ill", (2) "gravely disabled," or (3) a person with "developmental disabilities." *See* Colo. Rev. Stat. § 27-10.5-135(1). Ms. Biggs is developmentally disabled. A "developmental disability" is a disability that is manifested before the person reaches twenty-two years of age; constitutes a substantial handicap to the affected individual; and is attributable to mental retardation or related conditions that impair general intellectual functioning or adaptive

4

behavior. *See* Colo. Rev. Stat. § 27-10.5-102(10)(a).[3] Ms. Biggs has plead plausible evidence establishing a developmental disability that manifested in early childhood (*see* Amended Complaint, ECF No. 16, at ¶ 10-13; Exhibit A), persisting to present day (*see Id.* at ¶ 15-16; Exhibit B and C), and affecting nearly every aspect of her life.

10. **CCB Determination.** Ms. Biggs must also ultimately establish that she has been determined developmentally disabled by a community centered board ("CCB"). *See* Colo. Rev. Stat. § 25.2-10-202(26)(b); *see Graham v. Teller County*, 632 F App'x 461, 464 (10th Cir. 2015) (Court could not determine if plaintiff was mentally incompetent for purposes of the tolling statute without having plead *any facts* that show a CCB determination.). The plain text of § 25.2-10-202(26)(b) requires a CCB determination; however, neither the statute nor any controlling Court has held, as a matter of law, that such a determination is a prerequisite for suit to be filed. "When the language of a statute is plain and its meaning clear, it should be interpreted as written." *Southard,* 714 P2d 891, 898 (Col 1986). Rather, Courts have permitted the issue of tolling to continue past summary judgment based on affidavits and medical records alone, without a determination of disability by a CCB yet being made. *See e.g., Terry v. Sullivan*, 58 P.3d 1098, 1101 (Colo. App. 2002); *Southard,* 714 P2d at 899. Defendants, however, mislead the Court by asserting that *Pearson v. Fed. Exp. Corp.* requires a CCB determination before Ms. Biggs' rights were ever violated. *See* Def. Mtn. at ¶ 38. That case did not involve a disability based on mental incompetence, nor did the Court discuss CCB determinations. Unlike here, Pearson's claims accrued before she experienced a physical disability. Ms. Biggs, however, has been developmentally disabled since childhood, continuing while her constitutional rights were violated, and persisting to present day. The law is clear, the Court is to determine "*whether the record before [it]* raises a genuine issue of material fact as to

---

[3]  The American Association on Intellectual and Developmental Disabilities now refers to what had previously been termed "mental retardation" as defined by C.R.S. § 27-10.5-102(10)(a) as "intellectual disability."

whether [the plaintiff] was a 'person under disability'[.]" *Southard,* 714 P2d at 899 (emphasis added). Ms. Biggs has sufficiently plead a CCB determination of disability.

11. **Legal Representative.** Appointment of a "legal representative" is not a prerequisite for establishing tolling but rather the marker at which time the statute of limitations begins to accrue. No court having jurisdiction over Ms. Biggs has ever appointed her a legal representative. A "legal representative" is defined in both Colo. Rev. Stat. § 13-81-101 and Fed.R.Civ.P. R. 17(c) and each time the term "attorney" is explicitly omitted. In *Havens v. Johnson,* Judge Kreiger, reviewing a motion to dismiss, expressly held "[a]ssuming that [the plaintiff] has consistently been under a disability, his hiring of counsel does not equate with having a legal representative appointed to act for him." 2013 US Dist LEXIS 7708, at *18 (D. Colo. Jan. 18, 2013). Neither § 13-81-101 nor Rule 17(c) bar a mentally incompetent litigant from bringing suit or continuing on with litigation. *See Wodiuk v. Grazian*o, 2017 US Dist LEXIS 86948, at *45 (D. Colo. June 6, 2017). Rather, a Court appointed legal representative works with the disabled person's attorney. It is the role of the attorney to advise, and the role of the guardian ad litem to make decisions. *People in Interest of M.M.,* 726 P.2d 1108, 1120 (1986). In *Southard,* as in this case, the plaintiff's attorney did not fit within the statutory definition of "legal representative" nor did the attorney's filing of the initial complaint exempt the plaintiff's claims from the tolling provision. 714 P2d at 900. Since Ms. Biggs has not been appointed a legal representative, the statute of limitations has not accrued.

12. **Sufficiency.** Defendants have failed to show "beyond a doubt" that plaintiff cannot prove "any set of facts" that would toll the statute of limitations. *Whitington v. Sokol*, 491 F. Supp. 2d 1012, 1015 (D. Colo. 2007). The issue should therefore be permitted to go forward.

**II.     The Department is Municipally Liable Based on Two Separate Theories.**

13. The Department is municipally liable for the egregious constitutional violations of Hanna and Neugebauer under two different theories of liability. First, *Pembaur v. City of Cincinnati*, 475

U.S. 469, 482-483 (1986) establishes municipal liability when an action by an official with final policy making authority creates the constitutional violation. This form of establishing municipal liability is separate and distinct from the settled method of showing that the municipalities' failure to act was the moving force behind the violation. *See Monell v. Dep't of Social Servs. of N.Y.*, 436 U.S. 658, 695 (1978). A municipal liability claim may be founded on *either* basis. *See Simmons v. Uintah Health Care Spec. Dist.*, 506 F.3d 1281, 1284-85 (10th Cir. 2007). Ms. Biggs asserts plausible facts to support both theories of municipal liability.

**A.    The Department is Municipally Liable for Hanna's Policy Making Decisions.**

14. A municipal entity may be held liable pursuant to § 1983 for the conduct of its officials whose acts may fairly be said to represent official policy. *Pembaur*, 475 U.S. at 482-483. "[P]olicy can be established pursuant to a specific and *one-time* decision made by a 'final policymaker.'" *Randle v. City of Aurora*, 69 F.3d 441, 448 (10th Cir. 1995) (emphasis added). For example, in *Sanchez v. Hartley,* because the Court found the Sheriff to be a final policymaker for purposes of training deputies, the Court held that the municipal entity could be liable under § 1983 for any violations caused by the Sheriff's training decisions. 65 F. Supp. 3d at 1127-1129. In this case, Hanna is the final policymaker with respect to decisions related to matters concerning the operations of the county jail and those in its custody, such that his actions may fairly be said to be those of the municipality. *See e.g. Grady v. Jefferson County*, 2008 US Dist LEXIS 7220, at *8 (D. Colo. Jan. 17, 2008); *Estate of Began v. Lake Cty., Colorado Sheriff's Office*, 2008 US Dist LEXIS 51146 (D. Colo. July 3, 2008); *Layton v. Bd. of County Comm'rs*, 512 F App'x 861, 871 (10th Cir. 2013). Hanna was delegated the authority to make decisions about the movement, treatment, and safety of inmates at the county jail. Therefore, every action Hanna made on August 10, 2016 and thereafter, in deliberate indifference to Ms. Biggs' constitutional rights, was a decision made as a policy making official, to which the Department can be found liable.

**B.      The Department is Municipally Liable for its Inaction, Creating the Environment
that Allowed Hanna and Neugebauer to Violate Ms. Biggs' Constitutional Rights.**

15. In the absence of an express policy or an entrenched custom, "the deliberate indifference
standard may be satisfied when the municipality has actual or constructive notice that its action or
*failure to act* is substantially certain to result in a constitutional violation, and it consciously or
deliberately chooses to *disregard the risk of harm.*" *Schneider v. City of Grand Junc. Police Dept.*,
717 F3d 760, 779 (10th Cir. 2013) (emphasis added).  "The knowing failure to enforce policies
necessary to the safety of inmates may rise to the level of deliberate indifference." *Tafoya v. Salazar*,
516 F.3d 912, 915 (10th Cir. 2008); *Layton*, 512 F App'x at 871 (Dismissal denied because
municipal entities' inaction could have caused violation of constitutional rights).  With regard to
causation, "[a] failure to adopt a policy can constitute deliberate indifference when it is obvious that
the likely consequences of not adopting a policy will be a deprivation of constitutional rights."
*Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992); *Bordanaro v. McLeod*, 871 F.2d 1151, 1162
(1st Cir. 1989) (The inaction of the Mayor and Chief of Police amounted to a deliberate indifference
to the constitutional rights of the city's inhabitants).

16. **Knowledge.** Ms. Biggs does not have to show a history of sexual abuse by Hanna, or a
history of Neugebauer failing to intervene in reporting sexual abuse.  A municipality's knowledge
of the *risk* of sexual abuse to an inmate "need not be knowledge of a substantial risk to a *particular*
inmate, or knowledge of the *particular* manner in which injury might occur." *Tafoya*, 516 F.3d at
915 (emphasis added).  "It does not matter whether the risk comes from a single source or multiple
sources, any more than it matters whether a prisoner faces an excessive risk of attack for reasons
personal to [her] or because all prisoners in [her] situation face such a risk." *Gonzales v. Martinez*,
403 F3d 1179, 1187 (10th Cir. 2005).

17. First and foremost, "an inmate has a constitutional right to be secure in her bodily
integrity and free from attack by prison guards." *Hovater v. Robinson*, 1 F.3d 1063, 1068 (10th Cir.

1993). "The Eighth Amendment's prohibition of cruel and unusual punishment imposes a duty on prison officials to provide humane conditions of confinement, including reasonable safety from serious bodily harm." *Tafoya*, 516 F.3d at 916 (10th Cir. 2008). Pretrial detainees, like Ms. Biggs have similar constitutional rights under the Due Process Clause of the Fourteenth Amendment. *See Bell v. Wolfish*, 441 U.S. 520, 535, n. 16, 545 (1979). Secondly, the potential of inmate abuse has been well documented historically, by scholars, and by the Courts. It is well known that the authoritarian/subordinate relationship between deputies and inmates creates a breeding ground for sexual abuse and discrimination of inmates with disabilities.[4] "Historically, woman have been subjected to 'sexual abuse and oppression' by the males who controlled the prisons for women."[5] "[T]he sexual abuse experienced by female prisoners is more repugnant from a legal and policy standpoint, as the abusers are often actors of the state."[6] This culture has also been documented by the Courts, creating a basis for municipal liability. *See e.g., Boddie v. Schnieder*, 105 F.3d 857, 861 (2nd Cir. 1997) ("[S]exual abuse of a prisoner by a corrections officer has no legitimate penological purpose"); *Tafoya*, 516 F.3d 912; *Gordon-Smith v. Baldwin*, 2007 US Dist LEXIS 6961, at *16-17 (D. Colo. Jan. 31, 2007) ("acting with deliberate indifference towards the safety of inmates was clearly established law during the relevant time period."). Even in Sedgwick, the Department had actual and/or constructive knowledge that the failure to enact "zero-tolerance" policies could lead to abuse by its jail officials who had contact with inmates. *See* Amended Complaint at ¶ 54, 129, 150. The Court may infer that the Department's "zero tolerance" policies for deputies were created

---

[4] In March 1998, Amnesty International released "Not Part of My Sentence: "Violations of the Human Rights of Women in Custody, a report which documented rampant problems with sexual abuse, revealing unpunished rape and other sexual assaults committed by prison officials.
[5] Ashley E. Day, Comment, Cruel and Unusual Punishment of Female Inmates: The Need for Redress Under 42 U.S.C. § 1983, 38 Santa Clara L. Rev. 555 (1998).
[6] Bell, Cheryl; Coven, Martha; Cronan, John P.; Garza, Christian A.; Guggemos, Janet; and Storto, Laura (1999) "Rape and Sexual Misconduct in the Prison System: Analyzing America's Most "Open" Secret," Yale Law & Policy Review: Vol. 18: Iss. 1, Article 6.

because the Department knew it was substantially certain that, but for these policies, abuses of inmates was substantially likely to occur.

18. **Deliberate Indifference.** Though Hanna is the highest-ranking official, he nonetheless has absolute authority and control over the actions of every inmate—who are his subordinates. The same concerns that motivated the establishment of the "zero tolerance" policies prohibiting sexual assault of inmates and discrimination of inmates with disabilities by deputies should have been applied to Hanna. The Department however, deliberately choose to disregard the risk of harm.

19. **Causation.** In *Sanchez v. Hartley,* Judge Martinez found that a municipal entity could be held municipally liable for a single incident of deliberate indifference for failing to train the sheriff against coercive interrogations when it was plainly obvious the it knew, *or should have known*, that the sheriff and his deputies would be required to interview suspects who may be vulnerable to coercion due to disabilities or low IQ, and the failure to train resulted in coercion. 65 F. Supp. 3d at 1127-1129. Similarly, here, the Department deliberately choose to disregard the risk of harm, and the lack of oversight created the environment that allowed Hanna and Neugebauer to violate Ms. Biggs' constitutional rights. *See* Amended Complaint at ¶ 90-91, 143-144, 150-152. The Department can be held liable for all violations of Ms. Biggs' constitutional rights that stemmed from its inaction. Though the causation element in a § 1983 claim, like other difficult questions of fact, are normally reserved for a jury, *Rivas v. City of Passaic*, 365 F.3d 181, 193 (3d. Cir. 2004), there is sufficient proof the Department can be found liable for its deliberate indifference which caused her constitutional violations.

## III.    Neugebauer is Not Shielded by Qualified Immunity.

20. Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law. *Pahls v. Thomas*, 718 F.3d 1210, 1222, n 5 (10th Cir 2013). The doctrine fails to shield state actors performing discretionary functions from liability if their conduct violated "clearly

established" statutory or constitutional rights." *Toevs v. Reid,* 646 F.3d 752 (10th Cir. 2011). "For
the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point,
or the clearly established weight of authority from other courts must be as plaintiff maintains." *Foote
v. Spiegel*, 118 F.3d 1416, 1424 (10th Cir. 1997). "[T]he salient question . . . is whether the state of
the law [at the time of the conduct] gave [Defendants] fair warning that their alleged treatment of
[Ms. Biggs] was unconstitutional." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). The Tenth Circuit
"construes the facts in the light most favorable to the plaintiff as the nonmoving party." *Kaufman
v. Higgs*, 697 F3d 1297 (10th Cir. 2012). Officials can still be on notice that their conduct violates
clearly established law even in novel factual circumstances, *Hope*, 536 U.S. at 741, meaning the
qualified immunity test no longer has to be based on precedent that perfectly matches the facts of
the current case. *See Casey v. City of Fed. Hgts.*, 509 F3d 1278, 1284 (10th Cir. 2007) ("We cannot
find qualified immunity wherever we have a new fact pattern."). "The more obviously egregious the
conduct in light of prevailing constitutional principles, the less specificity is required from prior
case law to clearly establish the violation." *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004).

21. **Conspiracy.** To state a conspiracy claim arising under § 1983, a plaintiff must
demonstrate that the alleged conspirators had a (1) meeting of the minds and (2) engaged in
concerted action to violate the plaintiff's constitutional rights. *See Montoya v. Bd. Of Cty. Comm'rs*,
506 F. Supp. 2d 434, 443 (D. Colo. 2007). Ms. Biggs need only plead sufficient facts to support the
inference that some prearranged plan or joint action existed. *Id.* The Court may look at
circumstantial evidence and make logical inferences. *See Rounsville v. Zahl*, 13 F.3d 625 (2d Cir.
1994). A "sequence of events" in certain cases will "create a substantial enough possibility of a
conspiracy" to allow a case to move on to trial. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157
(1970). "[T]he existence or nonexistence of a conspiracy is essentially a factual issue that the jury,
not the trial judge, should decide." *Fisher v. Shamburg*, 624 F.2d 156, 162 (10th Cir. 1980).

22. Hanna not only authorized the conspiratorial agreement to violate Ms. Biggs' constitutional rights as a policy making official, the Department created the environment that allowed this conspiratorial agreement to happen due to a complete lack of oversight into abuses by Hanna to inmates who were in his custody. *See* Amended Complaint at ¶ 165. The Department can also be found liable for the official actions of Neugebauer in engaging in this conspiracy. *See Tunget v. Board of County Comm'rs of Delta County*, 992 P. 2d 650, 651-52 (Colo. App. 1999). Sufficient facts have been pled to reasonably infer Neugebauer knew that Hanna was committing a constitutional violation—false imprisonment at the very least, or worse, sexual assault—and he had every opportunity to stop Hanna. *See* Amended Complaint at ¶ 34, 56. However, having agreed with Hanna not to report and to cover up the constitutional violations, Neugebauer stayed silent even though he knew Ms. Biggs was likely to not report the incident as a result of her mental disability. *Id.* at ¶ 57-80, 166. As a result of Neugebauer's agreement to not intervene or report, Ms. Biggs was subject to excessive force, and her equal protection and substantive due process rights were violated. Neugebauer is not qualifiedly immune for engaging in the conspiracy. As discussed below, there is sufficient evidence of each violation underlying the conspiracy, which were clearly established before August of 2016.

23. **Failure to Intervene.** An officer may be liable if he had the realistic opportunity to prevent or stop a constitutional violation, but failed to do so. *Hall v. Burke*, 12 F App'x 856, 861 (10th Cir. 2001) (Found it was clearly established that "[a]n officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers"). In order for liability to attach, there must have been a *realistic opportunity* to intervene to prevent the harm from occurring. *Id.* "Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer *is an issue of fact for the jury* unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise." *Id.* The secondary officer does have to

observe the constitutional violation, so long as they "have reason to know that the primary officer is engaging in improper conduct." *Id.*

24. Neugebauer had the opportunity to intervene and prevent Ms. Biggs from being falsely imprisoned and sexually assaulted by Hanna. Ms. Biggs has plead sufficient facts that Neugebauer reasonably knew Hanna targeted Ms. Biggs because of her developmental disability; knew that Ms. Biggs was in her street clothes; in Hanna' s personal car; then in his house, all the while under Hanna's custody; and unable to escape. Yet, despite seeing Hanna's vehicle and being right in front of Hanna's house when the assault was taking place, he did nothing to even try and investigate the odd occurrence. He did not stop Hanna from putting Ms. Biggs in his personal vehicle; knock on Hanna's door; or call Logan County Jail to see if Ms. Biggs had been transferred. Whether it can be reasonably inferred from the record that an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury. *Richard v. Bd. of County Comm'rs.*, 2014 US Dist LEXIS 19586, at *103-104 (D. Kan. Feb. 18, 2014). A jury could reasonably find that Neugebauer had a realistic opportunity to intervene and prevent Ms. Biggs' false imprisonment and sexual assault, and he can be held liable for failing to do so. Though the facts of this case are extraordinary and egregious, *Hall* clearly established that an officer has a duty to intervene when they have a realistic opportunity to prevent a constitutional harm from occurring.

25. **Equal Protection.** In order for an equal protection claim to overcome qualified immunity, a plaintiff must show that she was treated differently than similarly situated persons, *see Gehl Group v. Koby,* 63 F.3d 1528, 1538 (10th Cir. 1995), and that the difference in treatment was not reasonably related to legitimate penological interests, *Turner v. Safley*, 482 U.S. 78, 89 (1987). "[F]reedom from bodily restraint is a fundamental right protected by the Equal Protection Clause. *See United States v. Phelps*, 17 F.3d 1334, 1344 (10th Cir. 1994). "[S]exual abuse of a prisoner by

13

a corrections officer has no legitimate penological purpose." *Boddie*, 105 F.3d at 861. Ms. Biggs has pled sufficient facts that she was targeted from the jail's general population because of her developmental disability—making her more vulnerable to threats, manipulation, and abuse. It was because of this developmental disability that she was treated differently than the other inmates at the jail and subsequently restrained and assaulted in Hanna's home. Normally, inmates are not dressed in plain clothes, put into an officer's personal vehicle, and then taken to that officer's home. Neugebauer knew that the treatment Ms. Biggs was receiving could not be reasonably related to any penological interest.

26. **Substantive Due Process.**    Substantive due process provides individuals with protections from governmental deprivations, *A.M. v. N.M. Dep't of Health,* 65 F. Supp. 3d 1206 (D.N.M. 2014), including protection from any infringement on an individual's safety and security, *Tanner v. McMurray*, 2018 U.S. Dist. LEXIS 196477, *55 (10th Cir. 2018), as well as right to bodily integrity, *Williams v. Berney*, 519 F.3d 1216, 1220 (10th Cir. 2008). A jury could infer that Neugebauer had a realistic opportunity to intervene and prevent Ms. Biggs' false imprisonment and sexual assault—fundamental violations of her bodily integrity—but failed to intervene. Moreover, a jury could infer that Neugebauer denied Ms. Biggs' substantive due process right to access to courts by delaying reporting for 12 days thereby hindering the DA from conducting a rape kit, obtaining DNA evidence, and photographing physical injuries—crucial evidence for Hanna's criminal case and Ms. Biggs' civil suit. Cover-ups that prevent a person who has been wronged from vindicating her rights violate the right of access to the courts protected by the substantive due process clause, *see Snyder v. Nolen*, 380 F3d 279, 291 (7th Cir. 2004), because there is a due process right to have legitimate claims of civil rights violations heard in court, *see Jones v. Norton,* 3 F. Supp. 3d 1170, 1210 (D. Utah 2014). *See A.M.*, 148 F. Supp. 3d. at 1280 (right of court access under the Fourteenth Amendment's due-process right is substantive rather than procedural). The right is lost

when law enforcement shields or covers-up information that would form the basis for a claim for redress. To prove a denial of access claim, a plaintiff must show that their claim is based on a "nonfrivolous, arguable, underlying claim." *Raguindin v. Yates*, 2016 U.S. Dist. LEXIS 43837 (D. Colo. Feb. 29, 2016). Ms. Biggs sufficiently pled facts that Neugebauer deliberately failed to investigate a constitutional violation and hindered the prosecution's ability to collect evidence crucial to Hanna's criminal case and Ms. Biggs' civil suit.

27. Neugebauer's conduct is sufficient to shock the conscience of a federal judge. "[C]onduct intended to injure in some way[,] unjustifiable by any government interest[,] is the sort of official action most likely to rise to the conscience-shocking level." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998). "Whether the conduct shocks the conscience is an objective test, based on the circumstances." *Peña v. Greffet*, 922 F. Supp. 2d 1187, 1227 (D.N.M. 2013).  The fact that Neugebauer knew that Ms. Biggs, a disabled female, changed into her street clothes, was put into Hanna's personal vehicle, brought to his house, all the while under Hanna's custody, but did nothing to intervene, investigate, or report the bizarre behavior for 12 days—blatantly infringing on Ms. Biggs' right to access, as well as her right to safety and security—was objectively shocking and abhorrent.

## **CONCLUSION**

28. Ms. Biggs has asserted plausible evidence of statutory tolling and cognizable claims against Sheriff Carlton Britton for municipal liability and Larry Neugebauer for his individual violations. Ms. Biggs respectfully requests the Court allow the matter to proceed for further factual development, or otherwise order Ms. Biggs be permitted to amend her pleadings.  It is respectfully requested that the Court deny Defendants' motion in its entirety.

Submitted on this 23rd day of January, 2019.

FISHER & BYRIALSEN, PLLC

/s/ Kaitlin F. Nares, Esq.
By:     Kaitlin F. Nares, Esq.
4600 S. Syracuse St. 9th Floor
Denver, Colorado 80237
T: (303) 256-6345
E: Kaitlin@FBLaw.org

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on the 23rd day of January 2019, I electronically filed a true and exact copy of the above and foregoing **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' FED. R. CIV. P. R. 12(B)(6) MOTION TO DISMISS** with the Clerk of the Court using the CM/WCF system which will send notification of such filing to the following email addresses:


Jonathan Eddy jeddy@sgrllc.com

Thomas Rice  trice@sgrllc.com


_____/S/ Kaitlin F. Nares_____
***Kaitlin F. Nares Esq.***
Fisher & Byrialsen, PLLC
Email: Kaitlin@FBLaw.org

16