# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 18cv2076 (DDD)

HOLLIS WHITSON,

       Plaintiff,

v.

FORMER SHERIFF THOMAS HANNA,
in his individual and official capacity,

       Defendant.

---

### PARTIALLY UNOPPOSED[1] MOTION TO ALTER OR AMEND THE FINAL JUDGMENT UNDER RULES 59(e) AND 60(b) OF THE FEDERAL RULES OF CIVIL PROCEDURE

---

Plaintiff respectfully requests that this Court alter or amend the final judgment under Fed. R. Civ. P. 59(e) to clarify that the jury verdict is being entered against both Defendant Hanna ("Hanna") and Defendant Sedgwick County ("County"), and, under Fed.R.Civ. P. 60(b)(1) and (6), that this Court relieve Plaintiff from the order entering judgment for the County on its motion to dismiss.

**Introduction**

Plaintiff sued Hanna in both his individual and *official* capacities.[2] Neither Hanna nor any other party ever moved to dismiss the official capacity claim. The County never challenged the "official capacity" claim and this Court never dismissed it. The Final Pretrial Order

---

[1] Following conferral, **Defendant Hanna joins in** this motion and **Defendant Sedgwick** County **opposes** it.
[2] Doc. 1, Civil Rights Complaint, p. 1, Doc. 16, Amended Civil Rights Complaint, p. 1. An official-capacity suit is in essence a suit against the entity. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985), citing *Brandon v. Holt*, 469 U.S. 464, 471–472 (1985).

1

acknowledges both capacities.[3]  The jury instructions contained a stipulation Hanna acted in his *official capacity*.[4]  Trial verdicts entered against Hanna in both capacities. To prevent confusion, Plaintiff requests that this Court amend the judgment to state the County is liable for the "official capacity" verdicts.

Because Plaintiff named Hanna in his official capacity, his suit functioned as a suit against Sedgwick County itself. *Kilman v. Brown*, 833 F. App'x 474, 475 (10th Cir. 2021).

The County and Britton moved to dismiss claims against them,[5] arguing that no *policy* was a "moving force" behind the constitutional violations.[6]  Plaintiff responded she did not need to show a policy for *Monell* liability because Hanna's actions were in fact the County's actions.[7] This Court found there was no link between a policy and the injuries:[8]

> Mr. Hanna's actions were not 'pursuant to' Department policies, but in direct contravention of them. On Ms. Biggs' reading, every action taken by a 'final policymaker' would amount [to] a policy that could lead to municipal liability, even if it is contrary to actual, adopted policy.[9]

Quoting *Randle v. City of Aurora*, 69 F.3d 441, 447-448 (10th Cir. 1995), this Court stated that for municipal liability based on "final policymaking authority," the challenged conduct "'must have been taken pursuant to a policy adopted by the official or officials.'"[10]

Respectfully, this Court's reading of *Randle* is incorrect as a matter of law.  It is well settled in the U.S. Supreme Court, the Tenth Circuit, and other Circuits that *Monell* liability can

---

[3] Doc. 127, p. 4.
[4] Doc. 144, p. 10.
[5] Docs. 22 and 40.
[6] Docs. 22 and 40, pp. 4-6.
[7] Doc. 35, pp. 13-16.
[8] Doc. 89, pp. 8-9.
[9] Doc. 89, p. 9.
[10] *Ibid*.

2

*also* attach to a county because of the actions of one of its final policymakers, so long as the actions were within the *realm of the grant of authority* of that final policymaker.

On its face, this Court's Rule 12(b)(6) Order did not dismiss Plaintiff's official capacity claims against Hanna. Those claims were tried to a verdict. To eliminate any ambiguity, Plaintiff asks this Court to amend or correct the final judgment to make clear the "official capacity" verdicts bind the County. A ruling dismissing the "official capacity" claims would be a clear error of law because:

- For "final policymaker" liability, a policy is not required. Actions taken by a final policymaker, even in contravention of policy or law, are attributable to the municipality and create *Monell* liability, and

- *Discontinuation* of a policy satisfies the "policy/custom" requirement just as much as *implementation* of a policy. Trial evidence demonstrated that Hanna's discontinuation of the "matron policy" was a moving force behind the constitutional violations.[11]

### Fed. R. Civ. Proc. 59(e) and 60(b)()

A Rule 59(e) motion "may be granted when the court has misapprehended the facts, a party's position *or the controlling law*." *Nelson v. City of Albuquerque*, 921 F.3d 925, 929 (10th Cir. 2019)(emphasis added). The Rule "permits, if not encourages, a district court to correct its own clear errors. Conservation of judicial resources supports a court's confessing error before the

---

[11] Plaintiff may amend her pleadings to add facts proven at trial. See Rule 15(b). *See* §1493 Issues Not Raised by Pleadings But Tried by Consent—In General, 6A Fed. Prac. & Proc. Civ. § 1493 (3d ed.)

3

issue reaches [the Court of Appeals]." *Kaufmann v. Kijakazi*, 32 F.4th 843, 851 (9th Cir. 2022). This Court should do so because there is a need to correct clear error and prevent manifest injustice. E.g., *Shapiro v. Rynek*, 250 F. Supp. 3d 775, 779 (D. Colo. 2017).

There is clear error. This Court misapprehended the controlling *Monell* law and/or the nature of the "official capacity" claims and the motions to dismiss. It is black letter law in this District, in this Circuit, and in this Country, that the actions and decisions of Hanna, as a final policymaker acting within the realm of his grant of authority, are imputed to the County. Uncorrected, the judgment would also be manifestly unjust. If the judgment is not amended, Plaintiff might receive no compensation at all and the County would escape responsibility, despite the jury's verdict and despite the law to the contrary.

"The language of Rule 60(b)(6) is broad: it allows the district court to grant relief for 'any other reason that justifies relief.'" *Johnson v. Spencer*, 950 F.3d 680, 702 (10th Cir. 2020). Here, such reasons include the jury's verdicts against Hanna in his official capacity, the clear law that Hanna acted in his official capacity as the final decision maker for the County, and the failure of the County to move to dismiss the official capacity claims. Liability attaches to the County by operation of law.

### 1. Because Hanna acted within the realm of his grant of authority as a final decisionmaker, his actions create individual <u>and</u> *Monell* liability.

This Court ruled municipal liability attaches *only* when the unconstitutional conduct complies with a policy or longstanding custom.[12] To the extent the judgment implements that ruling, it is obvious error. When a final decisionmaking official's actions cause a constitutional deprivation, *Monell* liability attaches without regard to whether the official was *following* or *violating* one of his own policies/procedures. Only if the actor is *not* the final policymaker is a

---
[12] Doc. 89, p. 9.

4

"policy or custom" required. When the actor *is* the final policymaker, his actions *are* the actions of the municipality:

> We part ways with the District and the district court, however, when it comes to the question whether showing compliance with a preexisting policy or longstanding custom is the ***only*** way to demonstrate that an action is properly viewed as the municipality's own. While *Monell* found liability on the basis of an 'official policy as the moving force of the constitutional violation,' 436 U.S. at 694, it fell to the Court in *Pembaur* to establish that actions taken by a municipality's final policymakers also represent acts of 'official policy' giving rise to municipal liability. [*Pembaur v. City of Cincinnati,* 475 U.S. 469, 481 (1986)]. And this makes sense. An act by a municipality's final policymaking authority is no less an act of the institution than the act of a subordinate employee conforming to a preexisting policy or custom.

*Simmons v. Uintah Health Care Special Dist.,* 506 F.3d 1281, 1285 (10th Cir. 2007). "[A] municipality is responsible for *both* actions taken by subordinate employees in conformance with preexisting official policies *and* actions taken by final policymakers, whose conduct can be no less described as the 'official policy' of a municipality." *Ibid*.

Final policymaker liability is a form of *direct* municipal liability. *E.g., Sanders v. Glanz*, 138 F.Supp.3d 1248, 1256 (N.D. Okla. 2015)("*Pembaur* provides an alternative means of establishing municipal liability where an action by an official with final policymaking authority is alleged to establish the constitutional violation. That form of establishing municipal liability is *in addition to* the settled method of showing that the entity's policy was the moving force behind the denial of a constitutional right.")(emphasis added).

As Magistrate Judge Watanabe stated in what Judge Moore later described as a "thorough and sound" analysis:

> Defendants argue that there was no policy, practice, or custom involved here. ***But Defendants' argument applies the doctrine too narrowly***. '[U]nder appropriate circumstances, a single decision by policymakers can be sufficient to create liability under

5

> § 1983.'  *Brammer-Hoelter v. Twin Peaks Charter Acad.,* 492 F.3d 1192, 1211 (10th Cir. 2007); *see Pembaur* [*supra*].

*Hatlee v. Hardey*, No. 13-CV-02469-RM-MJW, 2015 WL 13730086 *3 (D. Colo. 1/23/2015)(emphasis added), *report and recommendation adopted,* 2015 WL 5719644 * 15 (D. Colo. 9/29/2015). *See also, Bd. Cnty. Comm'rs, Bryan Cnty., Oklahoma v. Brown*, 520 U.S. 397, 404-405 (1997), where the Court distinguished actions of a subordinate (which require a policy) from actions of a final policymaker (which do not):

> Where a plaintiff claims that a particular municipal action *itself* violates federal law, or directs an employee to do so, resolving these issues of fault and causation is straightforward.… Accordingly, proof that a municipality's legislative body or authorized decisionmaker has intentionally deprived a plaintiff of a federally protected right necessarily establishes that the municipality acted culpably.  Similarly, the conclusion that the action taken or directed by the municipality or its authorized decisionmaker itself violates federal law will also determine that the municipal action was the moving force behind the injury of which the plaintiff complains.

*Ibid*. *See Tonjes v. Park County Sheriff's Office,* 300 F. Supp. 3d 1308, 1332 (D.Colo. 1/4/2018)("C.R.S. §30–10–506 plainly makes the sheriff the final policymaker for the Sheriff's Office with respect to employment of deputies, and if the sheriff acted unconstitutionally in those duties, the Sheriff's Office can be held liable for his actions.").[13]

The *Simmons-Pembaur* rule does not transgress Section 1983's prohibition on respondeat superior liability, because liability is assessed not for the conduct of subordinates, but for the County's own illegal acts (performed by its final policymakers). *Simmons*, at 1284-1285, quoting *Pembaur*, at 479.

The Tenth Circuit explains why a contrary view would undermine the purpose of §1983 and lead to absurd results. Municipal liability, the Circuit ruled, "must include even actions by

---

[13] In this case, C.R.S. §§30-10-511, 514, makes detainee transport and jail administration solely within the Sheriff's realm of authority.

6

final policymakers taken in defiance of a policy or custom that they themselves adopted." *Id*, at 1285. A different rule "would invite irrational results:"

> Holding municipalities immune from liability whenever their final policymakers disregard their own written policies would serve to encourage city leaders to flout such rules. Policymakers….would have little reason to abide by their own mandates, and indeed an incentive to adopt and then proceed deliberately to ignore them. Such a rule of law would thus serve to undermine rather than enhance Section 1983's purposes. *See generally City of St. Louis v. Praprotnik,* 485 U.S. 112, 126 (1988)(plurality op.)

*Simmons*, at 1285-1286. The Tenth Circuit held: "Actions taken by a municipality's final policymakers, even in contravention of their own written policies, are fairly attributable to the municipality and can give rise to [*Monell*] liability." *Id.* at 1287.

On September 27, 2022, Judge Varholak observed a split about how to name the proper party-defendant when *Monell* liability is based upon the actions of the Sheriff as final policymaker. *Coates v. Adams Cnty. Sheriff's Office*, No. 20-CV-01936-STV, __ F.Supp.3d __, 2022 WL 4493972, at *14 (D. Colo. 9/27/2022). Some cases hold that "the proper defendant is the Sheriff's Department because it is a constitutionally separate office[,]" others hold that the county is the proper defendant, and at least one case holds that both the county and the Sheriff in his official capacity may be sued.[14] *Ibid*. Importantly, there is *no dispute* that *Monell* liability is triggered when the Sheriff, as final policymaker, acts unconstitutionally in his duties. *Id*., at *14-15.

In *Coates*, the Sheriff acted within the realm of his grant of authority as the final policymaker on employment matters. Adams County tried to evade liability for the Sheriff 's actions because he is "not under the County's control and therefore his actions cannot be imputed to the County." *Coates*, at *14. Judge Varholak soundly rejected that argument and observed that

---

[14] Here, Plaintiff sued both.

no precedent allows "the type of municipal-liability loophole that Defendants seek to create here:"

> The County is the proper municipal defendant, and Plaintiffs' claims have been properly brought against it by naming Sheriff Reigenborn in his official capacity. Defendants argue that the County cannot be held liable for Sheriff Reigenborn's actions because the County does not control his employment decisions. *But this simply means that Sheriff Reigenborn is the final policymaker* on personnel matters for the County and that his employment decisions are therefore *chargeable as an official act of the County.*

*Coates*, at *15 (internal citations omitted)(emphasis added).

*Coates* illustrates this Court's error of law. Defendants' arguments that the County had no control over Hanna's actions does not *obviate* municipal liability; it merely *establishes* that Hanna *was the final policymaker* for *Monell* purposes. The County **concedes** Hanna was the final policymaker.[15] Accordingly, it is not necessary for this Court to go through the analysis otherwise required to identify a "final policymaker."[16]

This Court's ruling that the County does not control Hanna proves the point: When Hanna violated Ms. Biggs' constitutional rights as the final policymaker, he was acting as the County itself for *Monell* purposes.

The test for determining whether actions of a final policymaker are chargeable to the county is not whether those actions are *consistent* with written policy or "legitimate," but whether those actions are "within the realm of the official's grant of authority." *Randle,* at 448. *Simmons*, at 1285; see also *Seifert v. Unified Gov't of Wyandotte Cty.*, 779 F.3d 1141, 1159 (10th

---

[15] Doc. 22, pp. 8-9.
[16] Under criteria used to define "final policymaker." *Randle*, at 448; *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988), Hanna was a final policymaker under §1983. In Colorado, for *Monell* purposes, the elected Sheriff is the final policymaker for his department's law-enforcement activities. See *Cortese v. Black*, 838 F. Supp. 485, 496 (D. Colo. 1993).

8

Cir. 2015)(municipality is responsible both for actions taken by subordinate employees in conformance with pre-existing policies or customs *and actions by final policymakers whose conduct is the official policy of a municipality*).

Other Circuits agree. *Turner v. Upton City, Texas,* 915 F.2d 133 (5th Cir. 1990)(although the Sheriff was alleged to have acted *illegally* and in *contravention to policy* by planting illegal drugs and suborning perjury in a criminal conspiracy, his constitutional violations were imputed to the County for *Monell* purposes because he was acting within the realm of his grant of authority which included the Sheriff's job functions of investigating crime, apprehending criminals, and assisting in securing convictions).

In *Bennett v. Pippin*, 74 F.3d 578 (5th Cir. 1996), the County Sheriff went to the plaintiff's house to question her regarding a murder investigation and while there, he raped her. *Id*. at 586. The Fifth Circuit found *Monell* liabilty because the Sheriff's "relationship with Bennett grew out of the attempted murder investigation and because...he used his authority over the investigation to coerce sex with her." *Ibid*. "The fact that rape is not a legitimate law enforcement goal [did] not prevent the Sheriff's act from falling within his law enforcement function." *Ibid*.  Likewise, the fact that Hanna violated the law and his own policies by falsely imprisoning and sexually assaulting Plaintiff, does not prevent his actions "from falling within his law enforcement function" and therefore, does not insulate Sedgwick County from liability. Like the Sheriff in *Peppin*, Hanna "used his authority over Plaintiff to coerce sex." As a "final policymaker," he made a relevant decision that was " within the sphere of [his] final authority." *Ibid.*

This rationale applies to Hanna's actions:  "[w]hen the official representing the ultimate repository of law enforcement power in the county makes a deliberate decision to abuse that

9

power to the detriment of its citizens, [city] liability under section 1983 must attach." *Ibid* (quoting *Turner*, at 138).

In *Dean v. County of Gage*, 807 F.3d 931 (8th Cir. 2015), the Eighth Circuit found that allegations the Sheriff manufactured evidence and coerced testimony triggered *Monell* liability. The Sheriff was the final policymaker with respect to law enforcement investigations in the county and made specific decisions about the investigations. He attended key interrogations and told local police, who believed the plaintiff was innocent, to "stay out" of the investigation.

Even "a transient constitutional violation" by the Sheriff "can be a basis for municipal liability because of the way the Supreme Court has defined 'policy' and 'custom' for purposes of Section 1983." *Wright v. Fentress Cnty., Tennessee*, 313 F. Supp. 3d 886, 890 (M.D. Tenn. 2018)(*Monell* liability found for Sheriff who assaulted an inmate in his custody). *See also e.g. Congine v. Vill. of Crivitz*, 947 F. Supp. 2d 963, 975 (E.D.Wis. 2013); *Puana v. Kealoha*, No. CV 16-00659 LEK-WRP, 2022 WL 604726, at *15 (D. Haw. 2/28/2022). A contrary rule would lead to the absurd result that an illegal act by a subordinate employee of the Sheriff's Office *could* trigger *Monell* liability, but an illegal act of the top law enforcement officer himself, could *never* trigger *Monell* liability. As the U.S. District Court for the District of Hawaii eloquently explained: "Under the City's view, any illegal act by an official would, in effect, preclude municipal liability because the acts necessarily contravene the law. Additionally, a municipality could shield itself from liability for the constitutional violations of its officials by implementing broad policy statements forbidding illegal acts. Such a position would defeat the intended purpose of §1983." *Ibid.*

This case falls squarely within the rubric of the rule triggering municipal liability. In Sedgwick County, transports from the Sheriff's Office fall within the unfettered control and

10

authority of the Sheriff. Detainee transport and jail administration are within the Sheriff's realm of authority. See e.g. §§30-10-511, 514, C.R.S.  Hanna acted in his official capacity while conducting a transport of Ms. Biggs.  Hanna, an "official representing the ultimate repository of law enforcement power in the county, made a deliberate decision to abuse [his] power to the detriment of a citizen" when he falsely imprisoned Plaintiff and subjected her to excessive force. (paraphrasing and quoting *Turner*, at 138).

Hanna continued to act within the realm of his grant of authority when he failed to write a report about the transport and his alleged "questioning" of Plaintiff at his house and when he purposely withheld all information about this incident from the rest of his Sheriff's Office employees. Hanna, as the final decisionmaker for his office, was acting within the realm of his grant of authority when he used his position as the top County law enforcement officer to threaten Ms. Biggs with life in prison if she ever told anyone about the sexual assault.

*Monell* liability is clear under the "final policymaker" prong.  Plaintiff did not need to establish that Hanna acted pursuant to a county policy, because as Sheriff, he was the final policymaker and his actions/decisions are imputed to the County. This Court should amend or correct the final judgment to reflect the jury's verdict against Hanna *and* the County.

### 2.  Hanna enacted a specific policy – discontinuation of the "matron program" – that was a moving force behind the constitutional violations.

Independently, this Court should *also* rule that a Sheriff's Department policy was a moving force behind the constitutional deprivations.

The trial evidence demonstrated that, in his official capacity, Hanna discontinued the matron program or matron policy.  This policy action *also* triggers County/*Monell* liability, *Monell,* at 694, by playing a part in the constitutional violation, *Kentucky v. Graham*, at 166;

11

*Oklahoma City v. Tuttle,* 471 U.S. 808, 817–818 (1985); *id.,* at 827–828 (Brennan, J., concurring)). Even though actual, subjective knowledge of the risk is not required, because knowledge of a substantial risk of harm is sufficient, *Farmer v. Brennan*, 511 U.S. 825, 842 (1994),[17] Plaintiff proved actual knowledge at trial.

The trial evidence showed the matron policy existed to prevent substantial harm to female detainees during transports. Hanna testified that he knew that. Hanna was aware of the substantial risk of serious harm from unmonitored one-on-one transports of female detainees by male officers. *Cf. Cash v. Cnty. of Erie*, 654 F.3d 324, 338 (2d Cir. 2011), *cert. denied*, 565 U.S. 1259 (2012)("Cash's expert witness testified that accepted prison practice for deterring sexual misconduct between male guards and female prisoners was to prohibit unmonitored one-on-one interactions). Indeed, the trial evidence raised a strong inference that Hanna himself contemplated commission of a sexual assault.

Notwithstanding that clear risk of harm, Hanna discontinued the policy. At the very least, Hanna, as the policymaker, acted with deliberate indifference to the risk of substantial injury that could occur if female detainees could be transported one-on-one by a male officer without accompaniment by a female. At worst, the evidence raised the clear inference that Hanna discontinued the policy precisely so he could inflict injuries on inmates like Plaintiff.

While the issues of proof are "steep," the failure to adopt effective measures to guard against sexual misconduct can serve as the basis for *Monell* liability. *See e.g. J.K.J. v. Polk Cnty.*, 960 F.3d 367, 378 (7th Cir. 2020), *cert. denied,* 141 S. Ct. 1125 (2021). "The Supreme Court has recognized that *Monell* liability can arise from such decisions because a 'city's 'policy of inaction' in light of notice that its program will cause constitutional violations 'is the

---

[17] The *Farmer* Court reversed dismissal of a *Monell* claim challenging the prison's decision to house transsexual inmates in the general prison population.

12

functional equivalent of a decision by the city itself to violate the Constitution.'" *Ibid*.[18] The failure to make policy itself may be actionable. *Glisson v. Indiana Dep't of Corrs.*, 849 F.3d 372, 382 (7th Cir. 2017).

Here, of course, there is much more than mere "inaction." The Sheriff's Department, through Hanna himself, explicitly discontinued a policy that was in place precisely to protect female detainees from constitutional violations like the ones he perpetrated.

The policy decision to end the matron policy was "a moving force" underlying the constitutional violations. If Hanna had not canceled the matron policy, there would have been a female employee present to supervise the transport. It is inconceivable that, with a female employee present, Hanna would have taken Plaintiff to his home and sexually assaulted her. *Cf. Bass v. Pottawatomie Cnty. Pub. Safety Ctr.*, 425 F. App'x 713, 721 (10th Cir. 2011)(it was "reasonable to infer that Mr. Bass would not have been assaulted" had the jail implemented a policy of close supervision over the drunk tank).

Because there is a triable issue regarding whether Hanna's cancellation of the matron policy was a moving force behind the constitutional violations, this Court should allow Plaintiff to amend her complaint to add this theory of *Monell* liability under Federal Rule of Civil Procedure 15(b)(2).[19]

WHEREFORE, Plaintiff respectfully requests that, under Rule 59(e), this Court modify or amend its final judgment to reflect that the jury's verdict is entered against Hanna and against the County. Plaintiff further requests that, under Rule 60(b), this Court relieve Plaintiff of the Court's judgment dismissing the County from the case. Finally, Plaintiff also requests that she be

---

[18] The Seventh Circuit quotes *Connick v. Thompson*, 563 U.S. 51, 61–62 (2011) and *City of Canton v. Harris*, 489 U.S. 378, 395 (1989)(O'Connor, J., concurring and dissenting in part).

[19] Plaintiff offers two distinct theories of Monell liability: matron policy and final decision maker. The former could entail amendment of the pleadings and a Monell jury trial on the "moving force;" the latter would not. If the Court finds both Monell liability theories are correct, no further trial is required; the County is liable for Hanna's already-adjudicated constitutional violations while acting as the final decision maker for the County.

13

permitted to submit her bill of costs and her attorney's fees within 14 days after this motion has been resolved.

Respectfully submitted: October 19, 2022.

                                                **FISHER & BYRIALSEN, P.L.L.C.**
                                                /s/*David Fisher*
                                                David Fisher, Esq.
                                                4600 S. Syracuse Street, 9th Floor
                                                Denver, Colorado 80237
                                                T: 303-256-6345
                                                David@FBLaw.org

**CERTIFICATION**

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

                                                **FISHER & BYRIALSEN, P.L.L.C.**

14

*/s/David Fisher,*
David Fisher, Esq.
4600 S. Syracuse Street, 9th Floor
Denver, Colorado 80237
T: 303-256-6345
David@FBLaw.org

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing motion was electronically filed on October 19, 2022 using the CM/ECF system, email or regular mail, as indicated below and served on the following:

15

Matthew Buck (via email matt@red.law)

Hollis Whitson (via email hollis.whitson@gmail.com)

And all other parties which will be notified via ECF.

**FISHER & BYRIALSEN, P.L.L.C.**
/s/*David Fisher,*
David Fisher, Esq.
4600 S. Syracuse Street, 9th Floor
Denver, Colorado 80237
T: 303-256-6345
David@FBLaw.org
